IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
JOE LOUIS JONES, JR.,            )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    No.  09 C 1475
                                 )
NORTH CHICAGO POLICE DEPARTMENT, )
et al.,                          )
                                 )
          Defendants.            )
```

MEMORANDUM ORDER

In response to the motion filed by the three North Chicago police officer defendants (collectively "Movants"), seeking to dismiss Counts I, II and V of the Second Amended Complaint ("SAC") brought against them by Joe Louis Jones, Jr. ("Jones"), Jones' appointed counsel has acknowledged the legal insufficiency of the first two counts (both of which are barred by the statute of limitations) and has therefore agreed to their voluntary dismissal. This Court so orders, and Movants' motion is denied as moot to that extent.

As for Count V, however, Movants' effort is just as ill-considered as the other aspect of their motion was sound. As this Court stated in its brief January 6, 2010 memorandum order and as is echoed by appointed counsel's response, no matter how proper a police arrest may be, no arresting officer can legitimately engage in the gratuitous and unprovoked repeated kicking of the ankles of an arrestee who has already obeyed the order to spread his legs incident to that arrest and to the

consequent search.[1] And the action of a fellow officer in observing that conduct and laughing, rather than intervening to protest--and, indeed, to seek to stop--such constitutionally unlawful conduct is itself a violation of the arrestee's constitutional rights. Those things state a cognizable claim under 42 U.S.C. §1983 ("Section 1983"). Hence the motion is denied as to SAC Count V.

All of that said, this Court would be remiss if it did not address the present posture of the case in light of these rulings. Because a jury and not this Court would sort out the facts if the case were to go to trial, this Court's objective look at the situation may be of assistance to the parties in deciding whether to resolve the case short of trial instead. And both sides are assured that what is said here will not at all influence this Court's rulings if the case does reach trial.

First as to Jones, he must be given to understand that there is no realistic prospect of his finding a pot of gold at the end of the faint rainbow that his remaining claims represent. Even if the factfinding jury accepts Jones' version of events, any likelihood of more than a nominal to small damages award appears remote.[2] Appointed counsel, who has represented Jones

---

[1] What has just been said and what is said in the next sentence accepts the allegations of the SAC as true, as must be done in evaluating a Fed. R. Civ. P. 12(b)(6) motion. No factual findings have been made or are implied by the statements in the text.

[2] What has emerged from Movants' submission as to Jones' criminal background would seem bound to make him an unsympathetic

commendably to this stage, would seem well advised to provide his client with a look at his case in the cold light of reality.

For Movants (and their employer the City of North Chicago, to the extent that it may have to bear the burden of litigation expense and possible liability), the preparation for and then the ultimate conduct of even a wholly successful trial certainly promises to be expensive in relation to what is at stake. And the prospect of their having to pay two sets of lawyers because of Section 1983 and its companion statute (42 U.S.C. §1988), if Jones were to prove successful in establishing a constitutional deprivation, would add to the risks on that side of the "v." sign.

This then would seem to be a propitious time for both sides to go to the bargaining table with a sensible approach to the case in cost-benefit terms. Whether they do that is of course up to them. Meanwhile this court retains the previously-scheduled 8:45 a.m. March 17, 2010 status hearing date.

_____
  Milton I. Shadur
  Senior United States District Judge

Date: January 27, 2010

---

plaintiff in the eyes of jurors, as well as impacting his credibility as a witness when that background is elicited in cross-examination (or perhaps in direct examination, if his counsel elects to bring it out to blunt the force of cross-examination).